IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CR-104-1H
No. 7:19-CV-131-H

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| LEXY LEONEL HERRERA-PAGOADA, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the government's motion to dismiss, [DE #69], petitioner's motion to vacate under 28 U.S.C. § 2255, [DE #50]. Petitioner has filed a response, [DE #80]. The time for further filing has expired. This matter is ripe for adjudication.

## **BACKGROUND**

Petitioner is a citizen of Honduras who entered the United States in 1997 at approximately age 19. [PSR ¶ 27 and DE #70-1 Exhibit 1 Track Two].[1] On June 21, 1999, petitioner was arrested for trafficking in cocaine by possession in Wilmington, NC. [PSR ¶ 10]. Petitioner pled guilty to this felony drug charge on April

---

[1] Petitioner's June 2010 Removal Hearing audio recording provides that he entered the United States illegally in April 1997, [DE #70-1 Exhibit 1 Track Two], while the PSR provides he entered legally with a green card on May 27, 1997. [PSR ¶ 27].

24, 2000. [PSR ¶ 10]. However, he absconded before his sentencing. [PSR ¶ 4]. Petitioner's application for Temporary Protected Status was denied on October 28, 2002. [DE #70-1 Exhibit 1 Track One]. Between October 2002 and 2007, petitioner committed several misdemeanor offenses, including a number of offenses for driving while impaired. [PSR ¶¶ 11-16].

At petitioner's June 2010 Removal Hearing, he admitted he was a native and citizen of Honduras who illegally entered the United States. [DE #70-1 Exhibit 1 Track One]. The immigration judge at the hearing asked petitioner if he had funds to pay for his own departure, and repeated the question asking "do you have monies to pay for your trip to Honduras?" [DE #70-1 Exhibit 1 Track One at 4:28]. Petitioner answered that he did not. [DE #70-1 Exhibit 1 Track One at 4:16-4:32]. Petitioner was asked by the judge if he had a fear of persecution or torture upon return to his home country and he answered that he did not. [DE #70-1 Exhibit 1 Track One]. The immigration judge also told petitioner that he may be eligible for non-LPR cancellation, in light of petitioner's two children with U.S. citizenship, and that if he would like to make a request, the immigration judge would give him a continuance and the application form and a list of attorneys. [DE #70-1 Exhibit 1 Track Two]. Petitioner answered "No, I want to go back to my home country." Id. The immigration judge found that

> removability has been established by clear and convincing unequivocal evidence, respondent is not a native or citizen of the United States, but a native and citizen of Honduras who entered lately; was offered non-LPR cancellation; he has chosen against it; he does not have a fear of persecution or torture; doesn't have sufficient funds to pay for his own departure; does not otherwise qualify for any other relief.

[DE #70-1 Exhibit 1 Track Three]. The immigration judge ordered petitioner "removed, returned to Honduras, country of nativity and citizenship on the charges contained in the Notice to Appear." Id. The immigration judge also advised petitioner of his right to appeal and advised petitioner if he accepted the decision as final, it would become final as of that day, June 21, 2010. Petitioner responded, "[t]hat's fine." Id. Petitioner was deported on July 19, 2010. [PSR ¶ 4].

Petitioner reentered the United States at some time after July 19, 2010, and was arrested on March 9, 2012 for his 1999 drug charge and sentenced on September 11, 2012 to 35-42 months custody. He was released from custody on December 25, 2014, and was deported on February 23, 2015. [PSR ¶ 10].

On June 23, 2015, petitioner illegally reentered the United States and was encountered two days later by border patrol agents and taken into custody. [PSR ¶ 20]. Petitioner was deported on July 2, 2015. [PSR ¶¶ 4, 20].

Petitioner reentered the United States again some time after July 2, 2015, and was arrested on November 15, 2015 as a previously

deported felon and illegal alien. [PSR ¶ 3]. On January 11, 2016, petitioner pled guilty in the instant matter without a written memorandum of plea agreement to illegal reentry by a felon, in violation of 8 U.S.C. § 1326(a)&(b)(1) (Count One). On April 12, 2016, this court sentenced petitioner to a total term of imprisonment of 11 months and 3 years of supervised release. [DE #26]. Petitioner did not appeal.

On December 14, 2018, a motion for revocation of supervised release was filed. [DE #28]. The basis for the revocation motion was petitioner's arrest on November 15, 2018, in the Southern District of California for attempted illegal reentry, in violation of 8 U.S.C. § 1326. [DE #28]. Petitioner was charged with two counts in the Southern District of California: misdemeanor improper entry in violation of 8 U.S.C. § 1325 (Count One), and felony reentry of a removed alien, in violation of 8 U.S.C. § 1326(a) and (b) (Count Two). [United States v. Herrera-Pagoada, No. 3:19-CR-522-MDD (S.D. Cal) DE #1]. On March 19, 2019, petitioner pled guilty to Count One and the government dismissed Count Two, the felony count. Petitioner was sentenced on the same day to time served. [United States v. Herrera-Pagoada, No. 3:19-CR-522-MDD (S.D. Cal) DE #15].

On March 22, 2019, petitioner's sentencing counsel in the instant matter, James Todd, an Assistant Federal Public Defender in the Eastern District of North Carolina, received an email from

Assistant Federal Public Defender Marcus Bourassa, who represented petitioner in the Southern District of California. [DE #50-1 at 1]. Mr. Bourassa informed Mr. Todd that by obtaining the recording of petitioner's July 2010 removal hearing, Mr. Bourassa was able to discover that the immigration judge had failed to "adequately inform [petitioner] of the option to seek a voluntary departure, in lieu of an order of deportation, which legally invalidates the order of deportation." Id. Mr. Bourassa informed Mr. Todd that he was able to persuade the government to dismiss the § 1326 count, due to the failure of the immigration judge to adequately inform petitioner regarding voluntary departure, invalidating the July 2010 removal order. Id. at 1-2. Mr. Bourassa also informed Mr. Todd there was caselaw precluding reliance on a subsequent re-instatement of an initial invalid deportation order as a basis for an illegal reentry conviction. Id.; See United States v. Charleswell, 456 F.3d 347, 352 (3d Cir. 2006) ("And, where either proceeding – the reinstatement or the original – is so procedurally flawed that it 'effectively eliminated the right of the alien to obtain judicial review,' we may invalidate the criminal charges stemming therefrom." (citing United States v. Mendoza-Lopez, 481 U.S. 828, 839 (1987) (footnote omitted)) and United States v. Arias-Ordonez, 597 F.3d 972, 982 (9th Cir. 2010) ("As we have seen, the original removal was statutorily and constitutionally flawed, so the reinstatements stand on no stronger legal basis. As the

5

district court recognized, the government has built a house of cards that falls once the first is removed."). On April 16, 2019, petitioner was removed to the Eastern District of North Carolina in connection with his motion for revocation of supervised release. [DE #28 and DE #31].

On July 18, 2019, petitioner, proceeding pro se, filed the instant motion to vacate under 28 U.S.C. § 2255, [DE #50], arguing ineffective assistance of counsel and including an affidavit from his sentencing counsel, providing in pertinent part:

> Had I properly obtained the recording of the July 19, 2010 hearing, and researched the issue of whether a re-instatement could provide the basis of a 1326 conviction, I should have and would have filed a motion to dismiss the indictment, given the material and prejudicial omission of adequately informing Mr. Herrera-Pagoada of the voluntary departure option, 8 U.S.C. § 1326(d).

[DE #50-1 at 2]. In his motion to vacate, petitioner argues "[t]here had been an issue regarding his guilty plea and it affecting [sic] his legal status in which he was not made aware of," and "the Defendant was legally innocent of the underlying charge and his attorney should have known that." [DE #50 at 4, 9]. The government filed a motion to dismiss, [DE #69], to which petitioner has responded, [DE #80].

6

**COURT'S DISCUSSION**

**A. Actual Innocence**

Petitioner was sentenced in this matter in April 2016 and did not appeal his conviction or sentence. He did not file the instant motion to vacate until July 2019. Petitioner's motion therefore was not filed within the one-year statute of limitations provided in 28 U.S.C. § 2255(f)(1). However, a showing of actual innocence would lift the procedural bar caused by failure to timely file his motion. United States v. Montano, 398 F.3d 1276, 1284 (11th Cir. 2005) (citing Bousley v. United States, 523 U.S. 614, 622 (1998)).

To establish actual innocence, petitioner must demonstrate "that it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal sufficiency." Bousley, 523 U.S. at 623 (quoting Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).

A § 1326(a) conviction requires four elements, that the defendant: (1) was an alien; (2) was previously denied admission, excluded, deported, or removed; (3) was found in the United States after voluntarily re-entering; and (4) had not received the consent of the proper government authority to reapply for admission to the United States. 8 U.S.C. § 1326(a). As detailed herein, to collaterally attack a deportation order pursuant to 8 U.S.C. § 1326(d), three elements must be satisfied, and petitioner has

7

failed to present evidence to satisfy any of the three. Therefore, petitioner has not met his burden of showing actual innocence of his conviction for illegal reentry pursuant to 8 U.S.C. § 1326(a)&(b)(1), and his claim must be dismissed as untimely.

### B. Standard of Review

To prove ineffective assistance of counsel, petitioner must satisfy the dual requirements of Strickland v. Washington, 466 U.S. 668, 687 (1984). First, petitioner must show that counsel's performance was deficient in that it fell below the standard of reasonably effective assistance. Id. at 687-88. In making this determination, there is a strong presumption that counsel's conduct was "within the wide range of reasonable professional assistance." Id. at 689 (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)). The Strickland court reasoned that, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. (citing Engle v. Isaac, 456 U.S. 107, 133-34 (1982)). Second, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Further, when challenging

8

a guilty plea, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted).

**C. Analysis**

Petitioner argues his counsel at sentencing rendered ineffective assistance by failing to advise petitioner of his actual innocence, which resulted in an involuntarily entered guilty plea. In other words, petitioner contends he is actually innocent based upon the lack of evidence to support the second element of his original 8 U.S.C. § 1326 conviction because he contends his 2010 removal order was invalid as the immigration judge at his original removal hearing on June 21, 2010, failed to advise him of his eligibility for voluntary departure.

To collaterally attack a deportation order, an alien must show:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d)(1)-(3). To successfully collaterally attack a deportation order, petitioner must satisfy all three requirements. United States v. El Shami, 434 F.3d 659, 663 (4th Cir. 2005)

(citing United States v. Wilson, 316 F.3d 506, 509 (4th Cir. 2003), abrogated on other grounds by Lopez v. Gonzales, 549 U.S. 47 (2006)).

As to the first element, petitioner has not presented any evidence that he exhausted his administrative remedies. Neither petitioner in his original motion to vacate, nor counsel for petitioner in the response to government's motion to dismiss, argues that petitioner exhausted his administrative remedies or offers any explanation for a failure to exhaust. As noted supra in the audio recording of his 2010 removal hearing, the immigration judge advised petitioner of his right to appeal, and petitioner waived this right. Petitioner was provided a contemporaneous Spanish translation by translator at the removal hearing and answered the questions asked by the immigration judge. Petitioner, "neither administratively appealed the immigration judge's decision nor provided any explanation for why he could not do so." United States v. Cortez, 930 F.3d 350, 356 (4th Cir. 2019).

Petitioner has also not presented any evidence that he was deprived of the opportunity for judicial review. Again, neither petitioner in his original motion to vacate, nor counsel in the response to government's motion to dismiss have presented evidence on this prong. See United States v. Hernandez-Aguilar, 359 F.Supp.3d 331, 339 (E.D.N.C. 2019) (finding defendant argues only the third element of § 1326(d) and holding "[a]ccordingly,

10

Defendant's motion should be denied on his failure to meet his burden under §§ 1326(d)(1) and (2).") (citation omitted). The court finds petitioner has failed to present any evidence on the first two prongs of the § 1326(d) analysis for a collateral attack.

Finding petitioner has failed to carry his burden to satisfy the first two prongs, the court need not reach the third prong. However, even if the court were to consider fundamental unfairness, petitioner has not met his burden to establish a due process violation for the immigration judge's failure to advise petitioner of discretionary relief, specifically, pre-conclusion voluntary departure.

Petitioner's argument is that his 2010 hearing was "fundamentally unfair" as he was not "adequately informed of the option to seek a voluntary departure, in lieu of an order for deportation, which legally invalidates the order of deportation." [DE #50-1 at 1].[2] "To demonstrate fundamental unfairness, 'a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" El Shami, 434 F.3d at 664 (quoting Wilson, 316 F.3d at 510)). "'[D]ue process requires an alien who faces [removal] be provided (1) notice of the charges against him, (2) a hearing before an executive or

---

[2] The court notes petitioner was not advised of pre-conclusion voluntary departure as provided at 8 C.F.R. § 1240.26(b).

11

administrative tribunal, and (3) a fair opportunity to be heard.'" Id. at 665 (quoting United States v. Torres, 383 F.3d 92, 104 (3d Cir. 2004) (internal citations omitted)).

The immigration judge was required by the Code of Federal Regulations to "inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing, in accordance with the provisions of § 1240.8(d)." 8 C.F.R. § 1240.11(a)(2). The parties dispute whether petitioner was advised by the immigration judge of voluntary departure. The government contends petitioner was advised because the immigration judge inquired as to whether petitioner had the means to depart the country. However, the government fails to distinguish between pre-conclusion and post-conclusion voluntary departure. The ability to pay for travel is a requirement of post-conclusion voluntary departure pursuant to 8 C.F.R. § 1240.26(c), not pre-conclusion voluntary departure pursuant to 8 C.F.R. § 1240.26(b). The government has not argued that the immigration judge advised petitioner of pre-conclusion voluntary departure requirements, and the removal hearing recording shows the immigration judge did not advise petitioner of the requirements for pre-conclusion voluntary departure. However, as explained below, even assuming the immigration judge failed to so advise, petitioner has not shown the procedural error rises to the level of a due process violation.

12

The Second and Ninth Circuits have specifically found a due process violation where an immigration judge fails to advise an alien of the right to seek discretionary relief, generally, when the individual is "apparently eligible." <u>United States v. Copeland</u>, 376 F.3d 61, 71 (2d Cir. 2004) and <u>United States v. Lopez-Valesquez</u>, 629 F.3d 894, 897 n.2 (9th Cir. 2010).

The court in <u>Copeland</u> held:

> We believe that a failure to advise a potential deportee of a right to seek Section 212(c) relief can, if prejudicial, be fundamentally unfair within the meaning of Section 1326(d)(3). To be sure, relief under Section 212(c) is not constitutionally mandated and is discretionary. It does not follow, however, that where an alien is erroneously denied information regarding the right to seek such relief, and the erroneous denial of that information results in a deportation that likely would have been avoided if the alien was properly informed, such error is not fundamentally unfair within the meaning of Section 1326(d)(3).

376 F.3d at 71.

In contrast, the Third, Fifth, Seventh, and Tenth Circuits have held that an alien has no constitutional right to be informed of eligibility for, or to be considered for, discretionary relief. <u>See</u> <u>United States v. Santiago-Ochoa</u>, 447 F.3d 1015, 1020 (7th Cir. 2006) (agreeing with the majority of circuits that there is no "constitutional right to be informed of eligibility for – or to be considered for – discretionary relief.") (collecting cases); <u>Bonhometre v. Gonzales</u>, 414 F.3d 442, 448 n.9 (3d Cir. 2005) (holding "there is no constitutional right to be informed of

13

possible eligibility for discretionary relief.") (collecting cases); United States v. Aguirre-Tello, 353 F.3d 1199, 1205 (10th Cir. 2004) (en banc) (concluding "there is no constitutional right to be informed of the existence of discretionary relief for which a potential deportee might be eligible.") (collecting cases); United States v. Lopez-Ortiz, 313 F.3d 225, 231 (5th Cir. 2002) ("Because eligibility for § 212(c) relief is not a liberty or property interest warranting due process protection, we hold that the Immigration Judge's error in failing to explain [alien's] eligibility does not rise to the level of fundamental unfairness.").

The Fourth Circuit has not specifically addressed whether aliens have a due process right to be advised of the possibility of voluntary departure. However, the Fourth Circuit, along with the Sixth, Eighth, and Eleventh Circuits, has held that an alien has no constitutional right to discretionary relief or right to eligibility for discretionary relief. Smith v. Ashcroft, 295 F.3d 425, 429 (4th Cir. 2002) ("the discretionary right to suspension of deportation does not give rise to a liberty or property interest protected by the Due Process Clause") (citing Appiah v. INS, 202 F.3d 704, 709 (4th Cir. 2000)); Oguejiofor v. Att'y Gen. of the United States, 277 F.3d 1305, 1309 (11th Cir. 2002) ("Under our precedent, an alien has no constitutionally-protected right to discretionary relief or to be eligible for discretionary relief.")

(citations omitted); Escudero-Corona v. INS, 244 F.3d 608, 615 (8th Cir. 2001) ("Furthermore, '"[e]ligibility for suspension is not a right protected by the Constitution. Suspension of deportation is rather an act of grace that rests in the unfettered discretion of the Attorney General."'")(quoting Ashki v. INS, 233 F.3d 913, 921 (6th Cir. 2000)); Ashki, 233 F.3d at 921 (holding "'[b]ecause suspension of deportation is discretionary, it does not create a protectable liberty or property interest.'") (quoting Appiah, 202 F.3d at 709).

"In order for a statute to create a vested liberty or property interest giving rise to procedural due process protection, it must confer more than a mere expectation (even one supported by consistent government practice) of a benefit." Smith, 295 F.3d at 429 (citing Mallette v. Arlington Cty. Emps. Supplemental Ret. Sys. II, 91 F.3d 630, 635 (4th Cir. 1996). Further, "[t]here must be entitlement to the benefit as directed by statute, and the statute must 'act to limit meaningfully the discretion of the decision-makers.'" Id. (quoting Mallette, 91 F.3d at 635). "Indeed 'a constitutionally protected interest cannot arise from relief that the executive exercises unfettered discretion to award.'" Appiah v. INS, 202 F.3d 704, 709 (4th Cir. 2000) (quoting Tefel v. Reno, 180 F.3d 1286, 1300 (11th Cir. 1999)).

Following Smith, this court held that there is no constitutional right to be advised of discretionary relief, specifically denying defendant's challenge to a removal order in which he was not advised of relief under the International Convention Against Torture, 8 C.F.R. §§ 208.18(a)(1) and 1208.18(a)(1). United States v. Torres-Medina, No. 5:17-CR-281-1H, 2018 WL 627114, at *3 (E.D.N.C. Jan. 30, 2018) ("Based on the Fourth Circuit's holding that suspension of deportation is discretionary relief in which a defendant has no protected right, this court cannot find that defendant has a protected right in being advised of discretionary relief in which there is no protected right.").

In accordance with Fourth Circuit precedent and this court's own precedent, the court finds no due process violation in the immigration judge's failure to advise petitioner regarding voluntary departure. In so ruling, this court notes it is aware that at least three district court cases within the Fourth Circuit have followed the Second and Ninth Circuits and held that a failure of an immigration judge to advise of an alien's possible eligibility for voluntary departure, is a due process violation because an immigration judge is affirmatively obligated by 8 C.F.R. § 1240.11(a)(2) to so advise an alien in a removal hearing. United States v. Fernandez Sanchez, No. 3:18-CR-00022, 2019 WL 7041513, at *7 (W.D. Va. Dec. 20, 2019) ("Federal law may empower

16

immigration officials with discretion in granting the right to voluntarily depart, but it also affirmatively mandates that the official at least make the alien aware of this right."); United States v. Ordonez, 328 F.Supp.3d 479, 495 (D. Md. 2018) ("It was a 'fundamentally unfair procedural error' to misinform Ordonez that he was not eligible for relief, and it constituted a violation of [his] due process rights.") (citations omitted); and United States v. Itehua, No. 3:17-CR-119, 2018 WL 1470250, at *3 (E.D. Va. Mar. 26, 2018) ("First, a right to seek relief differs from a right to relief itself." and "The CFR required the [immigration judge] to inform Itehua of relief for which he might be eligible.") (citing Copeland, 376 F.3d at 72; and 8 C.F.R. § 1240.11(a)(2)). But see United States v. Sanchez-Lopez, ___ F.Supp.3d ___, No. 2:19-CR-64, 2019 WL 5686914, at *3 (E.D. Va. Nov. 1, 2019) (finding defendant has not shown prejudice and that he has not provided authority requiring an immigration officer to advise an alien of potential discretionary relief as was done in Itehua). This court finds the reasoning of those cases unpersuasive in light of current Fourth Circuit precedent.

Therefore, petitioner has not carried his burden to demonstrate a due process violation. As there was no due process violation the court need not reach the second prong of fundamental unfairness under § 1326(d)(3), whether petitioner suffered actual

17

prejudice. El Shami, 434 F.3d at 665 (citing Wilson, 316 F.3d at 509).

Finding petitioner cannot meet his burden to collaterally attack the removal order, petitioner fails to show he is actually innocent of the 8 U.S.C. § 1326(a) conviction. Additionally, the court finds petitioner has not established the final Strickland prong to uphold an ineffective assistance of counsel claim. Petitioner has failed to show "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Therefore, petitioner's claim of actual innocence fails and his § 2255 motion must be dismissed.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss, [DE #69], is GRANTED. Accordingly, petitioner's motion to vacate, [DE #50], is DISMISSED. The clerk is directed to close this case.

A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d

18

676, 683-84 (4th Cir. 2001) (citing Slack, 529 U.S. at 484). A reasonable jurist would not find this court's dismissal of Petitioner's § 2255 Motion debatable. Therefore, a Certificate of Appealability is DENIED.

This 13th day of January 2020.

                                                Malcolm J. Howard
                                                Senior United States District Judge

At Greenville, NC
#35